b

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| KEL'S COVE OF LAKE CLAIBORNE, L.L.C., <br> Plaintiff | CIVIL DOCKET NO. 1:22-CV-06168 |
| VERSUS | |
| JOHN P. EGNER, <br> Defendant | MAGISTRATE JUDGE PEREZ-MONTES |

## OPINION AND ORDER

Before the Court is a Motion for Summary Judgment filed by Plaintiff Kel's Kove of Lake Claiborne, L.L.C. ("Kel's Kove"). ECF No. 34. Defendant John P. Egner ("Egner") filed a cross-Motion for Summary Judgment (ECF No. 40), an Amended Motion for Summary Judgment (ECF No. 42), and a Motion to Amend Motion for Summary Judgment (ECF No. 49).

Because Egner filed a third Motion for Summary Judgment, his first and second Motions (ECF Nos. 40, 42) are DENIED AS MOOT.

Because the Purchase Agreement is null and void, Kel's Kove's Motion for Summary Judgment (ECF No. 34) is DENIED, Egner's Motion for Summary Judgment (ECF No. 54) is GRANTED, and Kel's Kove's action is dismissed with prejudice.

Additionally, because the Agreement is null and void and neither party may enforce its penalty provisions, neither party is entitled to an award of attorney's fees. However, Kel's Kove is ordered to return Egner's deposit.

I. <u>Background</u>

Kel's Kove is a limited liability company owned by three members. All are domiciled in Louisiana. ECF Nos. 4, 6. Egner is a citizen of Florida.

Kel's Kove filed a Complaint against Egner for breach of contract, asserting diversity jurisdiction. Kel's Kove seeks damages of $395,000 for breach of contract, as well as punitive damages and attorney's fees, costs, and interest. ECF No. 1 at 3. Egner answered. ECF No. 12.

Both parties filed Motions for Summary Judgment.[1]

II. <u>Law and Analysis</u>

    A. <u>Egner's first and second Motions for Summary Judgment should be denied as moot.</u>

Egner's second Motion for Summary Judgment, filed one day after he filed his first Motion, corrected the brief in his first Motion. Therefore, Egner's first Motion for Summary Judgment (ECF No. 40) is denied as moot.

Egner's third Motion for Summary Judgment is supported by the same brief as his second Motion, but includes additional summary judgment evidence. Therefore, Egner's second Motion for Summary Judgment (ECF Nos. 40 & 42) is also denied as moot.

---

[1] The parties have included discovery disputes in their Motions for Summary Judgment. Because this case can be decided on the record presently before the Court, the discovery disputes will not be discussed.

### B.     The contract and the allegations in the Complaint

Kel's Kove asserts in its Complaint that Egner agreed to buy immovable property in Claiborne Parish from Kel's Kove for $1,537,000.  ECF No. 1 at 1.  The Agreement was contingent upon Egner obtaining financing for $587,000.  ECF No. 1 at 1.  Kel's Kove contends that Egner did not make a good faith effort to obtain that financing.  Ultimately, Egner did not obtain the financing, and the sale fell through.  ECF No. 1 at 1-2.  Kel's Kove subsequently sold the property to another buyer for $237,000 less than Egner had agreed to pay.  ECF No. 1 at 2.  Kel's Kove contends Egner breached their Buy-Sell Agreement ("Agreement") by failing to make a good faith effort to obtain financing.

The contract – a "Commercial Agreement to Buy and Sell" (ECF No. 34-3) – became effective on March 8, 2022.  It provides in pertinent part:

> **Terms of Sale:**  New financing with a $750,000 downpayment with and finance the balance of $787,000* upon terms and conditions acceptable to the Buyer.  Should Buyer fail to furnish Seller with a written loan commitment from a lender, without contingencies except subject to approval of title, within 30 calendar days after the Effective Date of this Agreement, Seller shall have the right to declare this Agreement null and void and Buyer's Deposit shall be immediately refunded.  Buyer authorizes and instructs lender to release Seller or Seller's agents, written verification of the loan application and final loan commitment.
>
> \*          \*          \*
>
> **Other Terms and Conditions**:  *This officer is contingent on financing from the current Seller or from the previous owner of $200,000 with the following terms: amount financed $200,--- for sixty (60) months at five percent (5%) interest with no pre-payment penalties.

>*This offer is also contingent on Buyer obtaining financing for $587,000 to be provided by Buyer's lender of choice and is contingent on Buyer obtaining acceptable terms and conditions.
>Line #115 Commission.  See attachment Exhibit #2 – Referral Form.
>Line #86 Contracts for services: Seller to furnish most recent appraisal, current insurance certificate, survey, list of vendors, list of inventory, and catalog of all FF&E within 15 days.
>
>>*     *     *
>
>**Attorney's Fees**.  In addition to the remedies of breach described above, should either party institute legal proceedings to enforce the terms or conditions of this Agreement, the prevailing party shall be entitled to recover from the non-prevailing party all of the prevailing party's reasonable attorney's fees, costs and other expenses reasonably and necessarily incurred.

Kel's Kove asserts that Egner was pre-approved to borrow $587,000 from Gibsland Bank.  However, Egner postponed a closing, then failed to show up on a second closing date.  Kel's Kove contends Egner's failures to appear and close the sale cost them $8,000 in "closing costs."

Kel's Kove further asserts that Egner went to Century Next Bank and asked to borrow the entire $1,300,000, instead of $587,000 as agreed.  Century Next denied his loan request.  Egner then told Kel's Kove he had been denied financing there and the sale was therefore cancelled.

Egner contends that Kel's Kove failed to provide its "financials" (through Q1 end, including profit and loss statements and a balance sheet), as requested by Gibsland Bank before it would proceed with Egner's loan requests.  ECF No. 54-1 at

4

2; No. 54-2, no. 4; No. 54-5. Thus, Egner did not obtain financing from Gibsland before the closing date set by Kel's Kove. ECF No. 54-1 at 2.

### C. The Agreement is null and void, and its provisions are unenforceable.

Kel's Kove contends Egner breached the Agreement because: he did not accept the financing offered by Gibsland Bank; his effort to obtain financing from Century Next Bank was not made in good faith because he asked that bank to finance the entire amount; and he failed to show up for the closings. Egner contends: Kel's Kove failed to refund his $20,000 deposit; and owes him attorney's fees and costs under the terms of the Agreement.

"Agreements legally entered into have the effect of law upon the parties thereto, and courts are bound to give legal effect to these agreements according to the true intent of the parties; that intent is to be determined by the words of the agreement itself when they are clear, explicit and lead to no absurd consequences. LSA–C.C. arts.1983, 2045 and 2046." *Wilson v. Head*, 97-992 (La. App. 3d Cir. 2/4/98), 707 So.2d 127, 128 (quoting *Amoco Prod. Co. v. Slaughter*, 491 So.2d 760, 763 (La. App. 1st Cir. 1986), *writs den.,* 494 So.2d 333, 540, 541, 542 (La. 1986)).

"[A] sale is considered perfect, as between the parties thereto, 'as soon as there exists an agreement' (to that effect) 'for the object and for the price thereof, although the object has not yet been delivered, nor the price paid.' C. C. 2456. But it is equally true that 'a sale may be made, purely and simply, or, under a condition, either suspensive or resolutory' (C. C. 2457); and, in this instance, the agreement

between the parties was not one of sale, 'purely and simply,' but was an agreement that a sale should be made, by means of a notarial act, to be thereafter executed, provided certain conditions, specified or well understood, should be fulfilled, pending the fulfillment of which the title and possession of the property remained in the respective owners." *Page v. Loeffler*, 146 La. 890, 896–97 (La. 1920).

"It is well-settled that an agreement to purchase an immovable, conditioned upon purchaser's ability to obtain a stipulated loan to finance the purchase, is a contract subject to a suspensive condition." *See Treadaway v. Piazza*, 156 So. 2d 328, 330 (La. App. 4th Cir. 1963); *see also Druker v. Bertel,* 22-0261 (La. App. 4th Cir. 12/5/22), 367 So. 3d 33, 38; *Louisiana Real Estate Commission v. Blakes*, 04-216 (La. App. 5 Cir. 7/27/04), 880 So. 2d 79, 83 ("A contract to sell real estate which is contingent upon obtaining sufficient financing is a contract subject to a suspensive condition, and the contract does not become effective until the condition occurs."); *Garsee v. Bowie*, 37,444 (La. App. 2 Cir. 8/20/03), 852 So.2d 1156, 1161; *Woods v. Austin,* 347 So. 2d 897, 899 (La. App. 3d Cir. 1977). "A stipulation in a contract to sell that makes a sale conditioned upon a purchaser's ability to obtain a stipulated loan to finance the purchase, imposes a duty on the purchaser to make a good faith effort to obtain that loan." *Harris v. James*, 11-1533 (La. App. 1st Cir. 5/4/12), 2012 WL 1580517, at *3 (citing *Comprehensive Addiction Programs v. Mendoza,* 97–2979 (La. E.D. 5/27/99), 50 F. Supp. 2d 581, 583); *see also Garsee*, 852 So.2d at 1162; *Woods,* 347 So.2d at 899. "If the purchaser, through no fault of his

own, is unable to obtain such loan, he is released and entitled to the return of his deposit." *Treadaway,* 156 So.2d at 330; *see also Druker,* 367 So.3d at 38; *Garsee*, 852 So.2d at 1161, and is entitled to a return of his deposit. *See Druker,* 367 So.3d at 38; *Ray v. Peeples*, 387 So.2d 1303, 1305 (La. App. 1st Cir. 1980); *Woods*, 347 So.2d at 899; *Comprehensive Addiction Programs v. Mendoza,* 97-2979 (E.D. La. 1999), 50 F. Supp. 2d 581, 586. "Whether a purchaser acted in good faith is a question of fact and circumstances." *Id.*

If the purchaser fails to make a good faith effort to obtain financing, the suspensive condition is considered fulfilled, and the purchaser is estopped from asserting the nullity of the contract based upon inability to obtain financing. *See Farnsworth/Samuel Ltd. v. Cervini*, 492 So. 2d 1245, 1246 (La. App. 4th Cir. 1986), *writ den.,* 497 So.2d 316 (La. 1986) (citing La. C.C. Art. 1772); *Kraft v. Baker,* 377 So. 2d 871, 874 (La. App. 4th Cir. 1979); *Groghan v. Billingsley,* 313 So. 2d 255, 259-60 (La. App. 4th Cir. 1975), writ den., 318 So. 2d 46, 48 (La. 1975)). A buyer is only required to make *one* good faith effort to fulfill the condition of securing financing in accordance with a purchase agreement. *See In re Vinson,* 2018 WL 2324198, at *4 (Bankr. E.D. La. 2018) (citing *Weger v. Silveria*, 460 So. 2d 49, 51 (La. App. 1st Cir. 1984); *see also Dozier v. Smith*, 13-0777 (La. App. 1 Cir. 2/10/14), 2014 WL 539000 at *6; *Garsee*, 852 So.2d at 1161. Additional attempts to secure financing are evidence of a prospective buyer's good faith effort to secure financing. *See In re Vinson,* 2018 WL 2324198, at *4; *Dozier*, 2014 WL 539000 at *6.

Kel's Kove admits that Egner applied for financing at Gibsland Bank in conformity with the purchase agreement. But Kel's Kove argues Egner was in bad faith when he applied for financing for the entire purchase amount at Century Next Bank. If a buyer makes one good faith effort to fulfill the condition of securing financing that conforms to the purchase agreement, subsequent attempts to secure non-conforming financing do not vitiate the initial good faith attempt. *See In re Vinson,* 2018 WL2324198, at *4; *see also Dozier*, 2014 WL 539000, at *6; *Garsee*, 852 So.2d at 1161. Additional attempts to secure financing, either conforming or not, are simply additional evidence of a prospective buyer's good faith effort to secure financing. *See id.*

Because Egner had already applied for financing in conformity with the terms of the Agreement at Gibsland Bank, his subsequent attempt to borrow a different amount from a different lender did not violate the Agreement. As additional evidence of his good faith, Egner shows that he applied to Century Next Bank because it already had two mortgages on the Kel's Kove property for more than $1.2 million, so it already had a stake in the venture. He asked to borrow more than $587,000 from Century Next Bank in order to cover the costs of renovating the property. ECF No. 54-2. Additionally, Egner paid for a feasibility study on the property (ECF No. 54-2), and attempted to structure a loan through both banks that would work for the commercial property. ECF No. 54-3 at 1; No. 54-4 at 1.

Kel's Kove contends Egner is in bad faith for turning down the loan from Gibsland Bank. But Kel's Kove only contends "on information and belief," in the unverified statement of Robert Owens, a member of Kel's Kove, that Egner was offered financing by Gibsland Bank. Mike Smith, another member of Kel's Kove, states in his unverified statement that both Egner and Marc Able (an agent for both parties) told him that Egner "had obtained sufficient financing for the deal from Gibsland Bank and/or other financial institutions." ECF No. 48-3, no. 5. Kel's Kove does not show that it was provided a written final loan commitment, as required by the Agreement. ECF No. 48-1 at 13.

Still, both parties admit that Egner was offered financing by Gibsland Bank. But Egner contends the terms and conditions of the loan were not acceptable to him, and that Century Next Bank was the lender of his choice (ECF No. 54-2, nos. 7 & 10). Therefore, Egner did not send Kel's Kove a written final loan commitment within 30 days of the Agreement.

Because the suspensive conditions to the purchase agreement – that Egner obtain financing on terms and conditions acceptable to him from the lender of his choice – were not met, the purchase agreement did not become enforceable.[2] *See Blakes*, 880 So.2d at 83 ("If the Blakes were unable to obtain financing, through no

---

[2] *Contrast Wilson*, 707 So. 2d at 129–30, where the court did not accept Head's argument that the purchase agreement was void because he was unable to get financing on the terms he wanted, because that was not a term of the purchase agreement. The court held that Head could not unilaterally change the terms of the agreement to require performance on his part only if he obtains the financing of his choice.

9

fault of their own, the purchase agreement would have failed due to inability to obtain financing, and the issue of whether other terms of the purchase agreement were violated would be irrelevant."); *Garsee,* 852 So.2d at 1161 ("A contract to sell which is contingent up on the obtaining of financing is a contract subject to a suspensive condition. This contract does not become effective until the condition occurs. . . . therefore, as a matter of law, the suspensive condition was not fulfilled and the purchase agreement failed."). Because Egner did not provide a written loan commitment within 30 days, the Agreement failed and the issue of whether other terms of the Agreement were violated is irrelevant.

Kel's Kove also argues that Egner did not decline to accept the property in writing within 30 days from the effective date of the Agreement, as stated in the Agreement provision titled "Due Diligence." ECF No. 34-3 at 1. However, that provision applies only if Egner found, after inspections and other investigation, that the property was not in acceptable condition. Egner did not then, and has not here, complained about the condition of the property. Instead, he relies on conditions in the Agreement that the financing be provided by Egner's lender of choice and under terms and conditions that were acceptable to Egner. Egner did not have to comply with the terms of the "Due Diligence" provision.

Kel's Kove also complains that Egner owes money for failing to show up for the closings. The provision in the "Terms of Sale" effectively gave Egner 30 days from the effective date of the Agreement, March 8, 2022, to withdraw from the

Agreement. The 30-day period ended on April 7, 2022. Kel's Kove failed to disclose its financial information in time for either Gibsland Bank or Century Next Bank to provide financing for the sale to close within the time set in the Agreement. ECF No. 54-2, no. 5. There is no evidence that Egner provided Kel's Kove with a written final loan commitment from a lender by that deadline, nor did he ask Kel's Kove for an extension of time in which to obtain financing. But again, without fulfillment of the suspensive condition of the Buyer obtaining financing, the Agreement became null and void by operation of law. Kel's Kove should have refunded Egner's deposit, instead of setting a closing date. Egner is thus not liable for costs incurred by Kel's Kove in setting closing appointments.

Likewise, Egner is also not liable for Kel's Kove's alleged losses in its sale of the property to a third party "months later" for the reduced price of $1,300,000.[3] "An agreement for the sale and purchase of real estate does not operate a change of title and place the property at the risk of the prospective purchaser, the more especially when entered into subject to suspensive conditions specified or well understood. Hence, where the property is destroyed by an act of Providence [or otherwise loses value], pending the fulfillment of the conditions, the loss falls upon the seller, and he has no right of action, either for specific performance or damages." *Blum v. Edenborn*, 4 Pelt. 9, at *13 (La. Ct. App. 1920) (citing *Page*, 146 La. at 890).

---

[3] It appears that either $1,300,000 was the actual fair market value of the property, or that Kel's Kove chose to sell the property below market value because it was anxious to liquidate the property.

11

Therefore, there are no genuine issues of material fact that preclude a summary judgment in favor of Egner.

### D. Attorney's Fees and Deposit

As discussed above, Egner is entitled to a refund of his deposit from Kel's Kove. Egner also seeks attorney's fees and costs incurred in defending this action. "Under Louisiana law, attorney's fees ordinarily are not recoverable unless specifically authorized by statute or contract." *Hollybrook Cottonseed Processing, L.L.C. v. American Guarantee & Liability Insurance Co.*, 772 F.3d 1031, 1036 (5th Cir. 2014) (citing *Quealy v. Paine, Webber, Jackson & Curtis, Inc.,* 475 So.2d 756, 763 (La. 1985)).

Egner contends the Agreement provides for the recovery of attorney's fees. ECF No. 54 at 8-9; No. 54-1 at 2. However, neither party can enforce the terms of the Agreement. And Egner has not cited any other statutory provision under which he is entitled to attorney's fees.

### III. Orders

Based on the foregoing, IT IS ORDERED that Kel's Kove's Motion for Summary Judgment (ECF No. 34 ) is DENIED.

IT IS FURTHER ORDERED that Egner's first and second Motions for Summary Judgment (ECF Nos. 40, 42) are DENIED AS MOOT.

IT IS FURTHER ORDERED that Egner's third Motion for Summary Judgment (ECF No. 54) is GRANTED and Kel's Kove's action is DENIED AND DISMISSED WITH PREJUDICE.

Kel's Kove is ORDERED to refund Egner's deposit within 7 days from the date of this Order.

IT IS FURTHER ORDERED that both Kel's Kove's and Egner's motions for attorney's fees are DENIED.

IT IS ORDERED that the parties shall bear their own costs of this proceeding.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this \_\_3rd\_\_ day of July 2024.

_____
Joseph H.L. Perez-Montes
United States Magistrate Judge